## A04A0370. DeVOOGHT v. HOBBS.
(593 SE2d 868)

ELDRIDGE, Judge.

Appellant-plaintiff Heather DeVooght brought the instant medical malpractice action against appellee-defendant Calvin L. Hobbs, M.D., seeking compensatory and punitive damages, averring negli-

gence in failing to perform a tubal ligation[1] on her when she delivered twins by Caesarean section ("C-section") at the University Hospital in Augusta ("hospital"); breach of contract in failing to perform such procedure; and negligent misrepresentation by advising that her tubes had been tied obviating the need for the further use of contraception, this resulting in an unwanted pregnancy, a second C-section delivery, and a fourth child at age 25. Dr. Hobbs answered, denying the material allegations of the complaint, and following discovery, later filed his motion for partial summary judgment as to DeVooght's claims for breach of contract and negligent misrepresentation. Thereafter, the superior court denied Dr. Hobbs summary judgment upon the breach of contract claim but granted him partial summary judgment on the claim for negligent misrepresentation. Following a trial, the jury returned its verdict for Dr. Hobbs.

DeVooght appeals, contending that the superior court erred in granting Hobbs partial summary judgment as to her claim for negligent misrepresentation; erred in refusing to charge the jury that Dr. Hobbs could be found liable for alleged negligence in his nurse; erred in charging the jury on contributory and comparative negligence, hindsight, and DeVooght's duty to mitigate her damages; erred in excluding evidence showing negligence in Dr. Hobbs' nurse; and erred in entering judgment on the jury's verdict for the insufficiency of the evidence. Because DeVooght's claims of error are without merit, we affirm.

The record shows that DeVooght first went to Dr. Hobbs in April 2000. She was then approximately halfway through her second pregnancy. Dr. Hobbs observed that DeVooght's twins were in a breech position and scheduled her for a September 7, 2000 C-section delivery. At trial, DeVooght testified that on her first visit to Dr. Hobbs' office she expressed an interest in tubal ligation, realizing that with the birth of twins she would have three children and did not want a fourth.

While her delivery had been scheduled for September 7, 2000, DeVooght was hospitalized on August 31, 2000, with complaints of abdominal pain, fluid drainage, and irregular contractions. The following day, at approximately 9:45 a.m., Dr. Hobbs was paged and advised that DeVooght had gone into labor. Dr. Hobbs testified that DeVooght's unscheduled and premature labor presented an emergency situation for the low birth weight of the twins, their status as in the breech delivery position, and significant risk of umbilical cord

---

[1] A tubal ligation is a procedure in which the fallopian tubes are interrupted preventing pregnancy.

prolapse.[2] With DeVooght's consent, Dr. Hobbs delivered healthy twins by C-section approximately two hours later; however, he did not perform a tubal ligation in conjunction with the delivery.

In other trial testimony, DeVooght indicated that upon being admitted to the hospital, she told admitting nurses she wanted a tubal ligation in addition to a C-section and signed the hospital's informed consent form, having earlier signed a copy of the form in Dr. Hobbs' office as well as the federal form associated with the procedure. Dr. Hobbs did not co-sign the documents as a witness. Dr. Hobbs testified that he had not been involved in DeVooght's admission to the hospital; that he never discussed the tubal ligation procedure with DeVooght as ancillary to obtaining her consent to the procedure; and that he had no knowledge of her desire for such a procedure at the time of her delivery. *Held*:

1. There was no error for the superior court's grant of partial summary judgment to Dr. Hobbs upon DeVooght's negligent misrepresentation claim.

DeVooght averred that Dr. Hobbs "negligently misrepresented to [her] that a tubal ligation had been performed and that she did not require the use of birth control." However, upon granting Dr. Hobbs partial summary judgment in this regard, the superior court correctly observed that DeVooght had not come forward with evidence of misrepresentation on summary judgment apart from her own deposition testimony to the effect that Karen Tully Staten, Dr. Hobbs' nurse and the employee of the professional corporation of which he was a shareholder, OB/GYN Augusta, P.C., advised her that a tubal ligation procedure had been performed after she delivered the twins by C-section. However, "[i]n an action seeking to charge one for the acts of another on the theory that the one was the agent of the other, it is necessary that the petition [should] disclose, either expressly or by necessary implication, not only the existence of the agency, but also the connection of the act with the employment." *Bates v. Southern R. Co.*, 52 Ga. App. 576, 577 (183 SE 819) (1936). " 'A complaint must set forth the intended theory of recovery because there can be no recovery on a theory not alleged.' [*Gomez v. Chao*, 239 Ga. App. 474, 475 (1) (521 SE2d 421) (1999).]" *Ingraham v. Marr*, 246 Ga. App. 445, 446 (1) (540 SE2d 652) (2000). By her complaint, DeVooght pled no agency. Neither did she amend her complaint to do so. Under these circumstances, partial summary judgment for Dr. Hobbs on the claim of negligent misrepresentation was proper. Id.

---

[2] Umbilical cord prolapse occurs when the umbilical cord kinks, shutting off the flow of blood, and with it oxygen to the fetus, quickly causing fetal death.

2. DeVooght attacks the superior court's jury charge as at once too narrow and too broad.

(a) *Borrowed servant doctrine.* There was no error for the superior court's refusal to charge the jury that Dr. Hobbs was subject to liability under the borrowed servant doctrine upon DeVooght's claim that three weeks after her delivery Nurse Staten told her Dr. Hobbs had tied her tubes and that birth control was no longer necessary. She argues that such a charge was required as a matter of public policy because Dr. Hobbs failed to present any evidence establishing either the existence of his professional corporation, OB/GYN Augusta, P.C., or the corporation's status as Nurse Staten's employer. This argument to the contrary notwithstanding, the undisputed evidence of record was that Dr. Hobbs and his partner, Dr. Eddie R. Cheeks, practiced medicine as co-shareholders in the professional corporation, OB/GYN Augusta, P.C., and that Nurse Staten was its employee.

It is well settled that a professional, practicing in a professional corporation as a shareholder therein, is not personally liable for the acts or omissions of the corporation, "except [insofar as the professional] may become personally liable by reason of his [or her] own acts or conduct." (Punctuation and footnotes omitted.) *Henderson v. HSI Financial Svcs.*, 266 Ga. 844, 846 (2) (471 SE2d 885) (1996). Dr. Hobbs testified on direct as to the existence of his professional corporation, and where an entity's name imports a corporation, corporate status is presumed in the absence of rebuttal to the contrary. *Caroline Realty Investment v. Kuniansky*, 127 Ga. App. 478, 480 (1) (194 SE2d 291) (1972). No such rebuttal is of record. That negligent misrepresentation here is alleged against Nurse Staten alone foreclosing joint and several liability and the existence of the corporation as unrebutted, the instant refusal to charge was proper. *Henderson v. HSI Financial Svcs.*, supra; *Caroline Realty Investment v. Kuniansky*, supra. "[A] trial court does not err in refusing to give a requested charge that is not legally accurate and adjusted to the evidence." *Lucas v. Love*, 238 Ga. App. 463, 464 (4) (519 SE2d 253) (1999).

(b) *Contributory/comparative negligence.* DeVooght argues that the superior court erred in charging the jury as to contributory and comparative negligence. We disagree.

At trial, there was evidence that DeVooght had been instructed to come to the hospital for her delivery with the tubal ligation consent form she had prepared in part upon her last pre-delivery visit to Dr. Hobbs' office. Dr. Hobbs testified that had she done so, a doctor-patient informed consent discussion relative to the tubal ligation procedure would have occurred at the hospital, and that upon DeVooght's consent, the procedure would have been performed. There also was evidence that DeVooght failed to appear for her six-week

post-operative appointment notwithstanding instructions to the contrary issued by Dr. Hobbs' office. Other evidence established that the resumption of sexual activity and birth control are customarily addressed at this follow-up visit.

It is proper to charge contributory and comparative negligence in a medical malpractice case where, as here, there is evidence indicating that the procedure complained of as negligently not performed would have been performed had DeVooght followed Nurse Staten's instructions and of negligence in Dr. Hobbs upon her admission to the hospital for not more closely checking her chart and other medical records to determine whether she desired to be sterilized by tubal ligation. *Whelan v. Moone*, 242 Ga. App. 795, 797 (2) (531 SE2d 727) (2000); see also OCGA § 51-11-7 ("If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover [(Georgia's contributory negligence rule)]. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained [(Georgia's comparative negligence rule of which the 'equal to or greater than' bar is a component thereof)].").

(c) *Hindsight.* A "hindsight" charge distinguishes foresight and hindsight, the former as the basis for a negligence claim. *Brannen v. Prince*, 204 Ga. App. 866, 871 (6) (421 SE2d 76) (1992); *Holbrook v. Fokes*, 195 Ga. App. 418 (393 SE2d 718) (1990). It instructs the jury that "an after-the-fact assessment of facts or evidence cannot be the basis of a negligence claim so long as the initial assessment was made in accordance with the reasonable standards of medical care." (Punctuation and footnote omitted.) *Mercker v. Abend*, 260 Ga. App. 836, 839 (1) (581 SE2d 351) (2003). Such a charge is appropriate in a malpractice action "where the evidence raises an issue as to whether the negligence claim is based on later acquired or information not known or reasonably available to the defendant physician at the time the medical care was rendered." (Citations and punctuation omitted.) *Horton v. Eaton*, 215 Ga. App. 803, 807 (452 SE2d 541) (1994); compare *Byrd v. Med. Center of Central Ga.*, 258 Ga. App. 286, 291 (3) (574 SE2d 326) (2002); *McCoy v. Alvista Care Home*, 194 Ga. App. 599, 601 (391 SE2d 419) (1990) (hindsight charge inappropriate where no issue that negligence claim based upon information which only became available after the fact). This is such a case, and the superior court did not err in charging hindsight. "A charge is appropriate where there is any evidence, however slight, on which to predicate it." (Citation and punctuation omitted.) *Cherry v. Schwindt*, 262 Ga. App. 48, 52 (2) (584 SE2d 673) (2003).

(d) *Duty to mitigate damages.* Georgia's mitigation of damages rule is set forth in OCGA § 51-12-11 which provides that "[w]hen a person is injured by the negligence of another, he must mitigate his

damages as far as is practicable by the use of ordinary care and diligence." It is undisputed that DeVooght did not bring the tubal ligation consent form to the hospital as instructed. Neither is there any dispute that she missed her six-week post-operative appointment with Dr. Hobbs through no fault of his. Under these circumstances, the superior court did not err in charging the duty to mitigate damages.

3. Further, DeVooght contends that the superior court erred in granting Dr. Hobbs' motion in limine prohibiting the admission in evidence of portions of her expert obstetrician/gynecologist's deposition testimony to the effect that any negligent act by Nurse Staten was imputable to Dr. Hobbs. Such testimony as calling for a legal conclusion as to the reach of the borrowed servant doctrine was beyond the competence of DeVooght's expert witness and would have been inadmissible. "The expert may aid the jury, but he can not act as a member of the jury; nor, while on the stand, can he transcend the functions of a witness and, under the guise of giving testimony, state a legal conclusion. [Cit.]" *Travelers Ins. Co. v. Thornton*, 119 Ga. 455, 456 (2) (46 SE 678) (1904); *Gage v. Tiffin Motor Homes*, 153 Ga. App. 704, 707 (2) (266 SE2d 345) (1980). A fortiori, error does not result upon barring the admission of such inadmissible evidence at trial.

4. Finally, DeVooght claims that the superior court erred in entering judgment on the jury's verdict for the insufficiency of the evidence. This claim of error is without merit. "Where the jury returns a verdict which the trial court enters as a judgment, the judgment must be affirmed on appeal if there is any evidence to support the verdict, because the jurors are the exclusive judges of the weight and credibility of the evidence." *Sanders v. Brown*, 257 Ga. App. 566, 567 (571 SE2d 532) (2002). A judgment entered on a jury's verdict must be affirmed "if there is any evidence to support it[, and we] must construe the evidence with every inference and presumption in favor of upholding the verdict." *CSX Transp. v. West*, 240 Ga. App. 209, 210 (1) (523 SE2d 63) (1999). There was evidence that Dr. Hobbs delivered DeVooght's twins in an emergency situation unaware of her desire for the tubal ligation procedure in addition to her delivery. Otherwise the record shows that DeVooght arrived at the hospital less the consent forms for such a procedure notwithstanding instructions to the contrary; she failed to tell Dr. Hobbs that she wanted a tubal ligation; neither did she appear for her post-operative appointment with Dr. Hobbs to discuss matters relating to the resumption of sexual activity and birth control. Under these circumstances, the superior court properly entered its judgment upon the jury's verdict. *Sanders v. Brown*, supra; *CSX Transp. v. West*, supra.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED JANUARY 28, 2004.

*Capers, Dunbar, Sanders & Bruckner, Emory F. Sanders, Sr., Ziva P. Bruckner*, for appellant.

*Gorby, Reeves, Peters & Burns, Michael J. Gorby, James W. Standard, Jr.*, for appellee.